**LONE STAR CEMENT CORPORATION,**
Plaintiff-Appellee,

v.

**The PENNSYLVANIA RAILROAD COMPANY, Defendant-Appellant.**

No. 15232.

United States Court of Appeals
Seventh Circuit.

Feb. 7, 1966.

Rehearing Denied March 4, 1966.

William A. Wick, Edward B. Raub, Jr., Carl T. Reis, Indianapolis, Ind., White, Raub, Reis & Wick, Indianapolis, Ind., of counsel, for appellant.

William H. Krieg and Howard Kahlenbeck, Jr., Indianapolis, Ind., Krieg, DeVault, Alexander & Capehart, Indianapolis, Ind., of counsel, for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and KNOCH, Circuit Judges.

HASTINGS, Chief Judge.

This is an appeal in a diversity action by Pennsylvania Railroad Company (railroad) from a judgment of the district court entering a money judgment in the sum of $14,895.58, plus interest and costs, in favor of plaintiff, Lone Star Cement Corporation.

On June 2, 1956, Lone Star shipped from its plant in Limedale, Indiana, under a straight bill of lading, a bulk carload of cement to Cinder Block & Material Co. in Indianapolis, Indiana, over the lines of the railroad. The railroad car in which the cement was shipped had previously been used to ship dolomite, a mineral which, when contained in finished concrete products, tends to expand and fracture the product. Apparently, because of inadequate cleaning of the car, roasted dolomite fragments remained in the car and contaminated the bulk cement while it was in transit.

After delivery, this contamination was not discovered until the consignee, Cinder

Block, had unloaded about two-thirds of the shipment. Not yet knowing the nature of the contaminating substance, Lone Star requested Cinder Block to discontinue unloading the cement pending a determination. Cinder Block disregarded the request, unloaded the remainder of the shipment and used the cement to make concrete products.

Some of the contaminated products were sold by Cinder Block and used in construction projects. Fractures in the utilized products required substantial repairs, and Lone Star took it upon itself to see that the necessary repairs were made.

On February 26, 1957, Lone Star filed with the railroad a written notice of claim for full recovery of all damages suffered because of the contamination of the cement. The railroad disallowed the claim.

From correspondence between Lone Star and the railroad from February 26, 1957 through August 15, 1957, it appears that at all times Lone Star was demanding that the railroad pay for the cost of repairing all damages sustained by the third parties, who were the ultimate users of the contaminated concrete products.

On August 22, 1957, the railroad wrote to Lone Star as follows:

"The matter has received our further consideration, also that of our Legal Department, with agreement reached that the claim is one for settlement on divided responsibility basis, both carrier and shipper having mutual responsibility in the selection of the claim car for loading. This basis of settlement, it is understood, was mentioned by you when the claim was conferenced with our Mr. Kent, June 28, 1957.

"Accordingly, it will be appreciated if you will extend your authority for us to conclude the item on 50% payment basis."

On September 5, 1957, Lone Star responded:

"This will acknowledge receipt of your letter of August 23, [*sic*] 1957, in which you advised that, after further consideration, you are willing to settle our Claim No. 7–57, your File 705–00110, on a divided responsibility basis.

"We are agreeable to above basis of settlement, providing that it is mutually understood and agreed upon that settlement is to be based on total resultant amount of damage rather than invoice value, as previously discussed.

"In event that we are in agreement, will you kindly confirm at your earliest opportunity and advise whether we may expect interim adjustments as our claim is supplemented or if you prefer to make one settlement after all damages are known and accounted for."

On September 12, 1957, the railroad acknowledged Lone Star's letter as follows:

"Referring to your letter of September 5, claim 7–57, our number as above.

"I appreciate your acceptance of our offer of fifty percent in settlement on this claim and would prefer to make one settlement after you have determined your total claim bill. This claim will, therefore, be held in abeyance until your full claim bill for the total amount is received, which it is understood, you will process as promptly as possible."

Thereafter, Lone Star began to settle third party claims for damages. From time to time, while it was settling claims, Lone Star notified the railroad of estimated claims and actual amounts paid, without objection or complaint by the railroad. The estimates were continually revised upwards as new claims became known.

In May, 1958, a representative of the railroad called on a Lone Star official to discuss the claim against the railroad.

Then, for the first time, after total damages exceeded $17,000, the railroad objected to the claims and attempted to withdraw from its settlement agreement with Lone Star.

At this meeting, the railroad pointed out, in substance, that much of the consequential damage resulting from the contamination of the bulk cement could have been avoided if proper action had been taken by Lone Star and Cinder Block. The railroad suggested that it was prepared to pay only $2000. By a subsequent letter in July, 1958, the railroad offered to settle for $2000. Lone Star refused on the ground that the railroad had previously agreed to divide liability equally with Lone Star.

By the time Lone Star had reimbursed all claims, it had paid out $29,791.16 in damages to third parties.

The parties stipulated in writing the material facts and relevant correspondence. Upon this stipulation, Lone Star and the railroad each moved for summary judgment. The district court entered judgment for Lone Star for one-half of the total damages sustained by third parties.

The trial court had previously granted a motion to separate the trial of the issues of liability and damages. Following the judgment of the trial court on the issue of liability, the parties submitted a supplementary stipulation as to the full amounts paid by Lone Star to third parties. The trial court then entered judgment for damages against the railroad in the total amount of $14,895.-58, plus interest and costs.

On appeal, the railroad argues that there was no complete and binding settlement agreement; that the agreement was an illegal preference; that the limitation period on claims, specified in the bill of lading, had expired prior to the time of suit; that the trial court erred in entering summary judgment on the question of damages; and that dates from which interest was to be paid were improperly set.

■■■ The railroad contends that there is no support in the stipulated facts for the trial court's conclusion that the railroad agreed, without reservation of any right of review or consultation, to reimburse Lone Star for one-half of whatever third party claims Lone Star paid. While, in retrospect, such an agreement by the railroad appears disadvantageous, we cannot agree that it may therefore be presumed that the railroad would not have made nor intended to make such an agreement. We hold, as the trial court held, the stipulated facts and correspondence reveal a clear intent and agreement to bind each of the parties to pay one-half of the claims Lone Star settled and paid.

■■■ The settlement is not an illegal preference in violation of the Indiana unjust discrimination statute, Burns Ind. Stats. § 55–121 (1951 Repl.),[1] for it has not been demonstrated that the settlement involves any unreasonable preference or advantage of any kind between shippers in furnishing transportation services. Of course, it may be true, as the railroad asserts, that it would be unwilling to make such agreements with all of its customers. But a settlement, even if somewhat detrimental to the railroad, cannot be presumed to be a disguised preference or a form of rebate. Here, the contract of compromise settled damage claims of third parties who were not bound by the bill of lading, not being parties to such contract.

■■■ While the bill of lading contract involved in this case provides for a two year and one day limitation period, the action in the instant case was not on a claim arising out of the bill of lading contract, but upon a settlement agree-

---

1. "(a) Giving Preference. It shall also be an unjust discrimination for any such railroad company to make or give any undue or unreasonable preference or advantage to any particular person, firm, corporation or locality, in connection with the transportation of any persons or property, or to subject any particular kind of traffic or any particular person, place or locality to any undue or unreasonable prejudice, delay or disadvantage in any respect whatsoever."

ment, which has limitation period of ten years.[2]

The fact that a bill of lading contract may ultimately have inspired the settlement agreement does not create an identity between a claim on the settlement agreement and the original claim on the bill of lading. The action on the settlement agreement was an original action with a statutory period of limitation which had not run when the action was brought.

■ The parties submitted this case to the trial court on cross-motions for summary judgment on the issue of the railroad's liability. After the trial court's decision on liability, and at the suggestion of the trial court, the parties filed a supplemental stipulation disclosing the full amount of third party damages Lone Star had paid. Because there was no material issue of fact relating to damages, the trial court entered a judgment for damages against the railroad.

The railroad had previously admitted that this procedure was proper, for in its memorandum in support of its motion for separate trials of issues, it stated:

> " * * * if the Court decides that a valid compromise agreement was reached, that the limitation period did not run prior to the filing of this action and that the agreement bound the defendant to pay half of whatever amount the plaintiff might see fit to pay, the Court could forthwith enter final judgment against the defendant, because the total amount paid by the plaintiff has been stipulated."

This was the action taken by the trial court. We hold that the district court did not err in entering final judgment without a trial on the "issue" of damages.

■ Finally, the railroad complains that the trial court improperly allowed interest by ordering the railroad to pay interest on one-half of the damages paid by Lone Star for the period before May 9, 1962, when the last claim was paid.

The majority of claims in this case were paid by Lone Star prior to 1960. The trial court allowed interest from June 10, 1960 on those sums paid prior to 1960 and allowed interest from date of payment on sums paid after June 10, 1960, except for a payment of $24.00 made in 1961 which, in the stipulation, was included with those payments made prior to June 10, 1960.

In its letter of September 12, 1957, in response to Lone Star's inquiry of September 5, 1957, the railroad replied that it "would prefer to make one settlement after you have determined your total claim bill." It stated that the claim would be held in abeyance pending filing of a full claim bill for the total amount.

The recovery of interest on an "instrument in writing" is governed by Burns Ind.Stats. § 19–12–103 (1964) Repl.).[3] We hold the award of interest by the trial court was reasonable and consistent with the foregoing statute and entirely harmonious with applicable Indiana case law.

For the foregoing reasons, the judgment appealed from is in all respects affirmed.

Affirmed.

---

2. "The following actions shall be commenced within the periods herein prescribed after the cause of action has accrued, and not afterwards.
   " * * * *
   "Fifth. Upon promissory notes, bills of exchange and other written contracts for the payment of money hereafter executed, within ten [10] years * * *." Burns Ind. Stats. § 2–602 (1946 Repl., Supp., 1965).

3. "On money due on any instrument in writing, on an account stated, from the date of settlement, or an account closed, upon the day an itemized bill shall have been rendered and payment demanded, or on money had and received for the use of another and retained without his consent, interest shall be allowed at the rate of six dollars [$6.00] a year on one hundred dollars [$100]."