**M. BENDER & SON, INC., Plaintiff-Appellee,**

v.

**WEST 16TH STREET REALTY CORPORATION, Defendant-Appellant.**

No. 71-1152.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 27, 1972.

Decided April 10, 1972.

D. Reed Scism, Henry C. Ryder, Indianapolis, Ind., for West 16th Street Realty Corp.; Roberts & Ryder, Indianapolis, Ind., of counsel.

Wilson S. Stober, Daniel E. Johnson, Indianapolis, Ind., for plaintiff-appellee; Baker & Daniels, Indianapolis, Ind., of counsel.

Before SWYGERT, Chief Judge, SPRECHER, Circuit Judge, and CAMPBELL, Senior District Judge.*

SPRECHER, Circuit Judge.

This diversity case [1] questions the liability of the defendant corporation for the payment of construction work performed by the plaintiff corporation in the amount of $26,029.55 plus interest in connection with a shopping center owned and operated by the defendant corporation.

I

Defendant, West 16th Street Realty Corporation ("West 16th"), admitted that it was the owner of the improvements at a shopping center located at Speedway, Indiana, that it was the lessee under a long-term lease of the underlying real estate and also the current operator of the shopping center. It further admitted that the plaintiff, M. Bender & Son, Inc. ("Bender"), performed construction work at the shop-

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. The plaintiff is a Michigan corporation with its principal place of business in that state; the defendant is an Indiana corporation with its principal place of business in that state.

ping center site during 1960 and 1961 when the center was being built. The record indicates that the work performed by Bender was satisfactory, that no complaints were voiced in regard to that work and that it was accepted upon completion.

Nevertheless, West 16th contends that it is not liable for the payment for this work on the ground that no contract existed between Bender and West 16th, that Bay City Realty and Construction Company, Inc. ("Bay City") was the general contractor for the shopping center and that any contractual relationship which existed was between Bender and Bay City.

The record discloses that Bender and its predecessor companies had been in the construction business in the Saginaw, Michigan, area for 35 years. Beginning about 1953, Bender performed construction work on several shopping centers for Ernest Mathews, who owned and operated Bay City Realty and Construction Company, Inc., located at Bay City, Michigan.

Early in September, 1960, Mathews told Martin Bender, Bender's president, that he was forming a corporation to build a shopping center at Speedway, Indiana. He asked Bender to accompany him to Speedway, where they looked at the job; Mathews asked Bender if he could handle it. Bender said his corporation could handle the work, whereupon Mathews requested that he send a written quotation of Bender's rates to West 16th at Speedway, which was done on September 22, 1960.

Mathews had told Bender that he was a shareholder and officer of West 16th. It was stipulated in the trial court that West 16th was incorporated on June 6, 1960, and that its original shareholders included Mathews (who owned 20 percent of its stock), Bay City (10 percent) and another Mathews company, Briggs and Mathews, Inc. (10 percent). Mathews, initially the secretary, later became vice president. James Draper, a

director and secretary of West 16th, testified that Mathews was the general manager for West 16th of the Speedway shopping center and that "he was the fellow who was really in charge of the construction of the shopping center."

The written quotation of September 22, 1960, was sent by Bender to West 16th at Mathews' express direction. Bender then proceeded to perform construction services for West 16th at the Speedway site, which services included tearing out a pre-existing race track, moving dirt, raising the grade, installing storm and sanitary sewers, excavating, pouring footings and erecting steel work for the buildings. The work began in late September, 1960, and continued through most of 1961. Bender sent some 20 detailed invoices on approximately a monthly basis addressed to "West 16th St. Realty Corp., Box 24194, Speedway, Indiana," the name and address furnished to him by Mathews, in the total amount of $91,133.54.

Waiver-of-lien forms were executed in blank from time to time by Bender and furnished to Mathews. At the time of the trial several of the forms executed by Bender, as well as by other companies and persons who performed work on the shopping center, had been located in the books and records of West 16th. In the place on the printed waiver form indicating by whom the particular supplier of goods or services was employed, Bay City had been inserted on some forms but West 16th had been inserted on the majority.

Payments on the invoices rendered by Bender to West 16th were made up to the amount of $65,103.99, primarily by means of several checks issued by Bay City to Bender. James Draper, an officer and director of West 16th, testified that the construction-loan funds for the shopping center were paid by the insurance-company lender directly to Bay City according to what Draper described as a "fairly normal" practice. Bay City paid out the funds to the contractors who furnished the labor and materials.

On March 1, 1962, West 16th delivered to Bender five promissory notes, each in the amount of $2,500 and due respectively on March 31, April 30, May 31, June 30 and July 31, 1962. Each note was executed in the name of West 16th and signed by Mathews as vice president and by Draper as secretary. After Bender received these notes, it received six additional partial payments on account from Bay City, the last payment being made on or about December 28, 1962, and completing the total paid of $65,103.99.

Bender continued to press Mathews for the balance of the invoiced amounts until Mathews became ill and died in 1967. Thereafter Bender sought payment from West 16th's other officers. The complaint was filed on September 30, 1968.

West 16th refused payment on the ground that Bender contracted with Bay City rather than with West 16th. To support this theory, Draper testified that an oral "deal" had been arranged "partly on the telephone" and "over the restaurant tables" in New York among the promoters of the shopping center whereby Mathews was "to personally arrange for the construction" and was to be reimbursed by West 16th on the basis of his costs plus an override. There was no evidence that Bender or any of its representatives had any knowledge of this so-called "deal." The minutes of the meetings of the board of directors and of the shareholders of West 16th do not refer in any way to the alleged deal between Mathews and the other West 16th promoters.

■ The district court found upon a trial without a jury that "the contracting party was the defendant, West 16th Street Realty Corporation." The evidence amply supports that finding.

In addition to the facts recited above as they relate to Bender, the record also includes multitudinous documentation of West 16th's relation to the other entities which contributed to the construction of the Speedway shopping center. The vast majority of these documents indicate that the third parties involved were contracting with, communicating with, and relying upon West 16th. In those cases where written contracts were entered into, the acceptance of the particular offer was in the name of West 16th on the printed letterhead of West 16th and signed on behalf of West 16th by Mathews as vice president. In other words, the alleged "deal" described by Draper, if it existed, was not communicated beyond the parties who controlled and operated West 16th.

The record also includes a letter by Mathews to an Indiana credit association in which he stated that, although he was an officer and shareholder in seven corporations, "I . . . wish to advise you that any business I transact in the Indianapolis area will be through the West 16th Realty Corp."

Finally, when Draper was asked on cross-examination why West 16th executed and delivered five notes to Bender if its officers believed that it was not the responsible party, Draper testified: "Well, West 16th Street was going to have to pay it at some point because it was something that was ultimately owed for construction on the construction contract as far as we were concerned."

Under these circumstances the district court properly found that the contracting party was West 16th.

II

West 16th next contends that Bender's claim was barred by the applicable Indiana statute of limitation of six years. Ind.Stat.Ann. § 2–601 (Burns 1967), IC 1971, 34–1–2–1.

■ In view of the district court's finding that West 16th was the contracting party, the payments to Bender made on West 16th's behalf by Bay City on December 1 and 28, 1962, tolled the statute (as the court found), so that the complaint filed on September 30, 1968, was well within the six-year period.

III

The district court entered judgment for Bender against West 16th for

$26,029.55 plus interest. Included in that amount was a disputed invoice for $5,671.

The record contains a Bender voucher for $5,671 and a Bay City check paid to Bender for the exact amount. West 16th contends this evidence proves that the voucher had been paid in full. The bookkeeper for Bender testified, and produced supporting records to show, that in fact the $5,671 had been applied to other accounts and to another West 16th voucher. She further testified that this particular application had been directed by Mathews. In the determination of the judgment sum of $26,029.55, the district court treated the $5,671 voucher as unpaid and treated the other voucher to which it had been applied as paid.

■ This constituted the resolution of a fact question by the trial judge. Since it is supported by evidence in the record and is not clearly erroneous, we affirm his judgment in that regard.

### IV

West 16th's last contention is that the lower court erred in adding interest from December, 1962, the time of the last payment on account, pursuant to Ind.Stat.Ann. § 19–12–103 (Burns 1970), IC 1971, 24–5–1–3, which provides in part for the allowance of interest "on an account stated, from the date of settlement, or an account closed, upon the day an itemized bill shall have been rendered and payment demanded . . . . "

■ Since itemized bills had been rendered by December, 1961, and since Bender made repeated demands on West 16th through Mathews from December, 1962, until Mathews' death in November, 1967, the district judge correctly provided for interest from December, 1962, consistent with the Indiana statute and case law. Lone Star Cement Corp. v. Pennsylvania R.R. Co., 356 F.2d 901, 905 (7th Cir. 1966).

Judgment affirmed.

SWYGERT (dissenting in part and concurring in part).

I dissent only from Judge Sprecher's finding that interest accrued from December 1962, the time of the last payment on account. Section 19–12–103, Ind.Stat.Ann., requires that two conditions be fulfilled before interest will accrue. Interest is computed "upon the day an itemized bill shall have been rendered and payment demanded." In Scotco v. Dormeyer Indus., 402 F.2d 336 (7th Cir. 1968), the fact that all bills had been sent as of a certain date was not sufficient to trigger the assessment of interest. The court required a further act, the filing of the complaint, in order to fulfill the "payment demanded" requirement. Similarly, in the instant case, the facts indicate only that all the invoices had been sent out by December 1962. Since there is no evidence of a specific demand for payment by this date as required by the act, I do not agree that interest ought to be assessed from December 1962.